

# EXHIBIT "C"

# THE

# BINDING MEMORANDUM OF UNDERSTANDING

BINDING MEMORANDUM OF UNDERSTANDING

This Binding Memorandum of Understanding ("Binding MOU") is entered into on the 11th day of April, 2017 (the "Effective Date"), by and between Constructora Hostotipaquillo, S.A. de C.V., a Mexican company ("Hosto") with its primary office at Circuito Puericultores 4, Ciudad Satélite, C.P. 53100, Estado de Mexico, Mexico and CMG Asset Holdings LLC, a Delaware limited liability company, with its primary office at 15851 Dallas Parkway, Suite 650, Addison, TX 75001 ("Centurion").

Hosto and Centurion may be individually referred to as either individually a "Party" or collectively as the "Parties".

This Binding MOU is to serve as the binding terms for the drafting of certain documents in form and or substance mutually acceptable to each Party, which will more completely describe the relationship between the Parties (the "Definitive Agreements").

For the purposes of this Binding MOU the term "Project" means the construction by Centurion of a crude oil processing facility capable for processing one-hundred twenty thousand (120,000) barrels per day at the Port of Brownsville, Texas and the associated logistics assets required to supply crude oil to said facility.

## 1.     Scope of Binding MOU

The purpose of this Binding MOU is for Hosto to provide capital to Centurion to finance the initial engineering and other activities of Centurion relating to the Project.  Hosto will provide to Centurion the sum of three million dollars ($3,000,000.00) (the "Finance for Engineering").   As consideration for the Finance for Engineering, Centurion hereby commits to grant Hosto the exclusive right to fabricate the "Fabricated Tag Items" to be further detailed in the Definitive Agreements, subject to the further requirements described here in Sections 2 and 3.  Hosto shall transfer the sum of three million dollars ($3,000,000.00) immediately upon Hosto's receipt from Centurion of a "Promissory Note" in the form of Promissory Note attached hereto as Exhibit "A", duly executed by Centurion as principal Debtor and Miguel Nagel and James Ballengee acting as Guarantors.  The Promissory Note shall be in the amount of three million dollars ($3,000,000.00) in favor of Constructora Hostotipaquillo, S.A. de C.V. with maturity date of not more than one hundred and eighty (180) calendar days from the Effective Date. The Parties hereby agree to begin drafting the Definitive Agreements immediately upon Centurion's receipt of the $3,000,000.00.  In the event the Parties cannot reach an agreement regarding the Definitive Agreements, then Hosto shall have the right of first refusal to fabricate the Fabricated Tag Items.

## 2.     Limitations

Centurion will designate a company or individual to oversee the Project (the "Owner's Engineer").  The Owner's Engineer will support Hosto in continuous monitoring of the progress, available capacity and quality of fabrication. The issuance of any contract by Centurion or on behalf of Centurion to Hosto is subject to Hosto's express agreement to cooperate with the Owner's Engineer and to make any correction required based on Owner's Engineer's reasonable recommendations (which must be in confirmance with industry standards), and pursuant to the stipulations in the Definitive Agreements to satisfy the Project's cost, schedule, performance, and quality requirements.  Hosto hereby agrees to the following standards and terms:

a. Hosto will commit to provide sufficient manpower and capacity to fabricate and deliver the Fabricated Tag Items in accordance with (1) the specifications and quality standards specified and set forth by the Owner's Engineer, Centurion, or any other party that Centurion may designate for quality control or specifications (all of which must be reasonable and in conformance with industry standards), and the terms and conditions of the Definitive Agreements and (2) within the schedule as mutually agreed to by the Parties.  All specifications, standards, and details of schedule requirements for the Fabricated Tag Items shall be developed and incorporated into the Definitive Agreements; and

b. The Owner's Engineer will be charged with managing all of the contractors on the Project including, but not limited to Hosto, as stipulated in the Definitive Agreements.  The Owner's Engineer for the Project will have the final approval authority for all of the Fabricated Tag Items subject to the terms and provisions of the Definitive Agreements.

3.     **Additional Covenants**

Hosto and Centurion hereby agree to be bound by the following:

a. Hosto agrees to include a provision in the Definitive Agreements to utilize its line of credit in order to place orders or deposits (as directed by Centurion and agreed to by Hosto) for the Fabricated Tag Items as may be reasonably required by Centurion to insure schedule commitments as defined in the Definitive Agreements.

b. Centurion shall utilize the Finance for Engineering to accelerate the detail design and engineering to support Hosto's material purchase and fabrication, as well as other services to support the Project.

c. Hosto will develop a detailed manpower loading chart over the schedule period to support availability of resource to meet the fabrication schedule and quality requirements agreed to by the Parties. Such manpower loading chart shall be coordinated with the Owner's Engineer and once agreed upon shall form the basis for monitoring progress and available capacity. If at any time the Owner's Engineer believes that Hosto does not have sufficient resources to meet the schedule, the Owner's Engineer shall review such concern with Hosto and will develop a mutually agreed mitigation plan which shall not exclude placing some of the Fabricated Tag Items in other fabrication shops to meet the required time commitments.

d. Hosto shall develop a detailed cost estimate for each Fabricated Tag Item covered by the Definitive Agreements as detailed design and engineering progresses and final specifications become available.  In the event that Owner's Engineer and Hosto cannot agree on the price for a Fabricated Tag Item, the Parties hereby agree that the Fabricated Tag Item shall be submitted to at least two large, independent, reputable third parties (e.g. Foster Wheeler or Mustang or the like) for bid, and Hosto shall have the right to match the price, delivery, quality, and commercial conditions of the lowest price bidder for such Fabricated Tag Item.  Should Hosto match the price, delivery, quality and commercial conditions of the lowest price bidder for the subject Fabricated Tag Item, Centurion shall be obligated to contract said Fabricated Tag Item with Hosto.

e. Hosto shall develop a milestone payment schedule to be reviewed and approved by the Owner's Engineer and Centurion.

f. The detail cost estimate developed by Hosto for each Fabricated Tag Item shall be collaborated with Owner's Engineer and upon agreement, shall replace the previous estimated value for such Fabricated Tag Item in the "Not to Exceed Estimate" as defined in the Definitive Agreements.

g. The total fixed price shall be the sum of all approved estimates for the Fabricated Tag Items which is expected to be in the range of $200,000,00.00 to $260,000,000.00.

**4.      Binding Agreement**

This is a binding agreement, subject to the terms hereof. Parties object to all additions, exceptions, or changes to these terms, whether contained in any printed form or elsewhere, unless approved by the Parties in writing.

**5.      Relationship between the Parties**

Nothing in this Binding MOU shall be considered as creating a partnership, trust, corporation or other form of association between the Parties. This Binding MOU shall be considered as creating exclusivity in favor of Hosto for the fabrication of the Fabricated Tag Items in relation to the Project subject to the limitations, covenants, terms, and conditions provided herein and in the Definitive Agreements. Other than with respect to the return to Hosto of the Finance for Engineering, none of the Parties shall incur any obligations or liability on behalf of the other Party, including, without limitation, any costs and expenses relating to the negotiation, documentation and completion of the Definitive Agreements, unless and until both Parties have entered into a separate binding agreement in writing detailing such obligation and/or liability. None of the Parties shall act as the agent of the other Party, or have the authority to act, contract or incur any obligation or responsibility on behalf of another Party unless otherwise provided in this Binding MOU, Definitive Agreements, or by virtue of a properly executed power of attorney and any Party acting in breach hereof shall indemnify and hold the other Party and its directors, officers and employees harmless against any and all liabilities, losses, damages, expenses, costs and claims arising out of any such unauthorized act, contract or obligation.

**6.      Payment Term of the Finance for Engineering**

The Finance for Engineering shall be repaid to Hosto by Centurion no later than one hundred and eighty (180) calendar days from the Effective Date as more fully defined in the Promissory Note.

**7.      Confidentiality**

The confidentiality agreement executed between the Parties and dated as of January 24, 2017 (the "Confidentiality Agreement"), is incorporated by reference herein, and is applicable to this Binding MOU.

**8.      Assignment**

Each Party shall not assign the whole or any part of this Binding MOU or any benefit or interest in or under this Binding MOU to any third party without the prior written consent of the other Party.

**9.      Governing Law and Venue**

THE TERMS OF THIS BINDING MOU SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, EXCLUDING ITS CONFLICT OF LAW RULES.  EACH PARTY AGREES TO SUBMIT FOR ITSELF AND ITS PROPERTY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS BINDING MOU, OR FOR RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT THEREOF, TO THE EXCLUSIVE GENERAL JURISDICTION OF THE STATE OR FEDERAL COURTS OF THE STATE OF TEXAS LOCATED IN HARRIS COUNTY, TEXAS.  EACH PARTY AGREES THAT ANY SUCH ACTION OR PROCEEDING MAY BE BROUGHT IN SUCH COURTS AND WAIVES ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH ACTION OR PROCEEDING IN ANY SUCH COURT OR THAT SUCH ACTION OR PROCEEDING WAS BROUGHT IN AN INCONVENIENT COURT AND AGREES NOT TO PLEAD OR CLAIM THE SAME.  EACH PARTY HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST

Page 3 of 6

EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO TRIAL BY JURY IN ANY ACTION, CLAIM, SUIT OR PROCEEDING RELATING TO OR ARISING OUT OF THIS BINDING MOU.

**10.    Limitation of Liability**

Notwithstanding anything to the contrary in this Binding MOU, neither Party shall be liable for any incidental, consequential, exemplary, or punitive damages arising under this Binding MOU.

**11.    Entire Agreement**

This Binding MOU sets forth the entire agreement and understanding between the Parties with respect to the subject matter thereof. This Binding MOU supersedes all oral and written agreements and understandings between the Parties made before the execution of this Binding MOU, unless the contrary is expressly stated in this Binding MOU.

**12.    Miscellaneous**

This Binding MOU may be supplemented or amended only if such supplement or amendment is in writing and agreed and signed by the Parties. No failure to exercise and no delay in exercising on the part of any Party of any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise of any right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies provided in this Binding MOU are cumulative and not exclusive of any rights or remedies otherwise provided by law. This Binding MOU may be signed in any number of counterparts, all of which taken together shall constitute one and the same instrument. Either Party may enter into this Binding MOU by signing any such counterpart, and each counterpart shall be as valid and effectual as if executed as an original. If any provision of this Binding MOU is determined to be invalid, illegal or unenforceable in whole or in part, such invalidity, illegality or unenforceability shall attach only to such provision or part and the remaining part of such provision and all other provisions shall continue in full force and effect and shall be construed as if such invalid, illegal or unenforceable provision or part had never been included in this Binding MOU. Captions or headings to sections or paragraphs of this Binding MOU are inserted for convenience of reference only, and shall not affect the interpretation or construction hereof. All notices given to any of the Parties pursuant to or in connection with this Binding MOU shall be in writing, shall be delivered by hand, by certified or registered mail, return receipt requested, or by Federal Express, Express Mail, or other nationally recognized overnight carrier. Notices are effective when received at the addresses set forth above of this Binding MOU.

IN WITNESS WHEREOF, the Parties have executed this Binding MOU in duplicate by their duly authorized representatives as of the Effective Date.

Constructora Hostotipaquillo, S.A. de C.V.          CMG Asset Holdings LLC

By: _____                          By: _____

Name: _____                         Name: _____

Its: _____                         Its: _____

Exhibit A

See Attached



## UNSECURED PROMISSORY NOTE

**$3,000,000.00**                                                                              **April 17, 2017**

FOR VALUE RECEIVED, CMG Assets Holdings LLC, a Delaware limited liability company (*"Maker"*) having an address at 15851 Dallas Parkway Suite 650, Addison, Texas 75001, hereby promises to pay to the order of Constructora Hostotipaquillo, S.A. de C.V., a Mexican company (together with its successors and assigns and any subsequent holders of this Note, *"Payee"*) having an address of Circuito Puericultores 4, Ciudad Satelite, C.P. 53100, Estado de Mexico, Mexico, as hereinafter provided, the principal sum of THREE MILLION AND 00/100 DOLLARS ($3,000,000.00), together with interest thereon at the Note Rate (as hereinafter defined), and otherwise in strict accordance with the terms and provisions hereof.  This Note is the "Note" referred to in the Binding Memorandum of Understanding between Payee, as "Seller", and Maker, as "Buyer", dated as of April 17, 2017.

### ARTICLE I - DEFINITIONS

1.1     <u>Definitions</u>.   As used in this Promissory Note, the following terms shall have the following meanings:

*Business Day*:  a weekday, Monday through Friday, except a legal holiday or a day on which banking institutions in Dallas, Texas are authorized or required by law to be closed. Unless otherwise provided, the term *"days"* when used herein shall mean calendar days.

*Debtor Relief Laws:*  Title 11 of the United States Code, as now or hereafter in effect, or any other applicable law, domestic or foreign, as now or hereafter in effect, relating to bankruptcy, insolvency, liquidation, receivership, reorganization, arrangement or composition, extension or adjustment of debts, or similar laws affecting the rights of creditors.

*Default Interest Rate*:  a rate per annum equal to the Note Rate plus five percent (5.00%), but in no event in excess of the Maximum Lawful Rate.

*Event of Default*:  any event or occurrence described under <u>Section 3.1</u> hereof.

*Maturity Date*:  the earlier to occur of (a) October 18, 2018, or (b) the Installment Note Maturity Date (as defined herein).

*Maximum Lawful Rate*:  as defined under <u>Section 4.3</u> hereof.

*Note*:  this Promissory Note, as may be renewed, extended, amended, modified and supplemented from time to time.

*Note Rate*:  the rate of 0.0% per annum.

All terms used herein, whether or not defined in <u>Section 1.1</u> hereof, and whether used in singular or plural form, shall be deemed to refer to the object of such term whether such is singular or plural in nature, as the context may suggest or require.

## ARTICLE II - PAYMENT TERMS

2.1     Payment of Principal and Interest.  The outstanding principal balance of this Note and any and all accrued but unpaid interest hereon shall be finally due and payable in full on the Maturity Date or upon the earlier maturity hereof, whether by acceleration or otherwise.  No principal amount repaid may be reborrowed.

2.2     Application.  Except as expressly provided herein to the contrary, all payments on this Note shall be applied in the following order of priority: (a) the payment of accrued but unpaid interest, and (b) the payment of all or any portion of the principal balance then outstanding, in the direct order of maturity.

2.3     Payments.  All payments under this Note made to Payee shall be made in immediately available funds at the address listed in the opening paragraph of this Note (or at such other place as Payee may have established by delivery of written notice thereof to Maker from time to time), without offset, in lawful money of the United States of America. Payments received by Payee in the place designated for payment on a Business Day prior to 5:00 p.m. Dallas, Texas time at said place of payment shall be credited prior to the close of business on the Business Day received, while payments received by Payee on a day other than a Business Day or after 5:00 p.m. Dallas, Texas time on a Business Day shall not be credited until the next succeeding Business Day.  If any payment on this Note shall become due and payable on a day other than a Business Day, such payment shall be made on the next succeeding Business Day.  Any such extension of time for payment shall be included in computing the amount of interest which has accrued and shall be applied in connection with such payment as provided in Section 2.2.  For clarity, Borrower agrees and acknowledges that all accrued and unpaid interest will be added to the outstanding principal balance.

2.4     Computation Period.  Interest on the indebtedness evidenced by this Note shall be computed on the basis of a three hundred sixty-five (365) day year and shall accrue on the actual number of days elapsed for any whole or partial month in which interest is being calculated.  In computing the number of days during which interest accrues, the day on which funds are initially advanced shall be included regardless of the time of day such advance is made, and the day on which funds are repaid shall be included unless repayment is credited prior to the close of business on the Business Day received as provided in Section 2.3 hereof.

2.5     Prepayment.  Maker shall have the right to prepay, at any time and from time to time, without fee, premium or penalty, all or any portion of the outstanding principal balance hereof, including, as of such payment date, the amount of any interest that has been accrued and added to the outstanding principal balance.  All prepayments shall be applied to reduce the outstanding principal balance.

2.6     Unconditional Payment.  Maker is and shall be obligated to pay all principal, interest, and any and all other amounts which become payable under this Note absolutely and unconditionally and without any abatement, postponement, diminution, or deduction whatsoever and without any reduction for counterclaim or setoff whatsoever.  If at any time any payment received by Payee hereunder shall be deemed by a court of competent jurisdiction to have been a voidable preference or fraudulent conveyance under any Debtor Relief Law, then the obligation to make such payment shall survive any cancellation or satisfaction of this Note or return thereof to Maker, and shall not be discharged or satisfied with any prior payment thereof or cancellation of this Note, but shall remain a valid and binding obligation of Maker enforceable in accordance with the terms and provisions hereof.

2.7     Late Charge; Default Interest Rate.  For so long as any Event of Default exists under this Note which has not been cured within the periods set forth in Section 3.1, regardless of whether or not

**PROMISSORY NOTE – Page 2**
7637378.3/SP/38371/0101/031616

there has been an acceleration of the indebtedness evidenced by this Note, and at all times after the maturity of the indebtedness evidenced by this Note (whether by acceleration or otherwise), and in addition to all other rights and remedies of Payee hereunder, interest shall accrue on the outstanding principal balance hereof at the Default Interest Rate. For purposes of clarification, even under an Event of Default, cured or otherwise, interest shall be added to the principal then outstanding. Maker acknowledges that it would be extremely difficult or impracticable to determine Payee's actual damages resulting from any Event of Default, and such late charges and accrued interest are reasonable estimates of those damages and do not constitute a penalty.

## ARTICLE III - EVENT OF DEFAULT AND REMEDIES

3.1    <u>Event of Default</u>.  The occurrence or happening, at any time and from time to time, of any one or more of the following shall immediately constitute an "<u>Event of Default</u>" under this Note:

(a)    Maker fails, refuses, or neglects to pay and satisfy, in full and in the applicable method and manner required, any required payment of principal or interest or any other portion of the indebtedness evidenced by this Note as and when the same shall become due and payable, and such default continues for a period of ten (10) days after written notice to Maker;

(b)    The occurrence of any other default, breach, or event of default under this Note, other than those described in <u>Section 3.1(a)</u> above, and such default, breach or event of default continues for a period of thirty (30) days after written notice to Maker; or

(c)    Maker (i) executes an assignment for the benefit of creditors or an admission in writing by Maker of Maker's inability to pay, or Maker's failure to pay, debts generally as the debts become due; (ii) files as a debtor a petition, case, proceeding, or other action pursuant to, or voluntarily seeks the benefit or benefits of, any Debtor Relief Law, or takes any action in furtherance thereof; (iii) files either a petition, complaint, answer, or other instrument which seeks to effect a suspension of, or which has the effect of suspending any of, the rights or powers of Payee granted in this Note; or (iv) allows the filing of a petition, case, proceeding, or other action against Maker as a debtor under any Debtor Relief Law and (A) Maker admits, acquiesces in, or fails to contest diligently the material allegations thereof, (B) the petition, case, proceeding, or other action results in the entry of an order for relief or order granting the relief sought against Maker, or (c) the petition, case, proceeding, or other action is not permanently dismissed or discharged on or before the earlier of trial thereon or thirty (30) days next following the date of filing.

3.2    <u>Remedies</u>.  Upon the occurrence of an Event of Default, Payee shall have the immediate right, at the sole discretion of Payee and without notice, demand, presentment, notice of nonpayment or nonperformance, protest, notice of protest, notice of intent to accelerate, notice of acceleration, or any other notice or any other action (a) to declare the entire unpaid balance of the indebtedness evidenced by this Note (including, without limitation, the outstanding principal balance hereof, including all sums advanced or accrued hereunder, and all accrued but unpaid interest thereon) (the *"Outstanding Balance"*) at once immediately due and payable (and upon such declaration, the same shall be at once immediately due and payable) and may be collected forthwith, and (b) to exercise any of Payee's other rights, powers, recourses, and remedies under this Note, or at law or in equity, and the same (i) shall be cumulative and concurrent, (ii) may be pursued separately, singly, successively, or concurrently against Maker, at the sole discretion of Payee, (iii) may be exercised as often as occasion therefor shall arise, it being agreed by Maker that the exercise, discontinuance of the exercise of, or failure to exercise any of the same shall in no event be construed as a waiver or release thereof or of any other right, remedy, or recourse, and

(iv) are intended to be, and shall be, nonexclusive.  In addition to the foregoing, Payee shall have the right, but not the obligation, after an Event of Default and upon written notice to Maker, to declare that the Outstanding Balance be payable in equal monthly installments of principal and interest on the first day of each calendar month based on one hundred twenty month (120) month mortgage style amortization, commencing on the first day of the calendar month after the date on which the Event of Default occurs (the *"First Installment Payment"*), and continuing up to and including the date that is ten (10) years after the First Installment Payment (the *"Installment Note Maturity Date"*).  Upon the request of Payee, Maker agrees to execute an amended and restated note to evidence the Outstanding Balance in the event the remedy described in the preceding sentence is exercised.  In the absence of an amended and restated note, all terms contained in this Note will apply except for the terms specifically described in this <u>Section 3.2</u>; provided, however, that the Note Rate will be set at the long-term annual Applicable Federal Rate as published by the Internal Revenue Service as of the date of the First Installment Payment.

## ARTICLE IV - GENERAL PROVISIONS

4.1     <u>No Waiver; Amendment</u>.  The failure to exercise any remedy available to Payee shall not be deemed to be a waiver of any rights or remedies of Payee under this Note, or at law or in equity.  No extension of the time for the payment of this Note or any installment due hereunder, made by agreement with any person now or hereafter liable for the payment of this Note, shall operate to release, discharge, modify, change, or affect the original liability of Maker under this Note, either in whole or in part, unless Payee specifically, unequivocally, and expressly agrees otherwise in writing.  This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, or modification is sought.

4.2     **WAIVERS.  MAKER WAIVES AND RELINQUISHES PRESENTMENT FOR PAYMENT, DEMAND, NOTICE OF NONPAYMENT OR NONPERFORMANCE, PROTEST, NOTICE OF PROTEST, NOTICE OF INTENT TO ACCELERATE, NOTICE OF ACCELERATION, OR ANY OTHER NOTICES OR ANY OTHER ACTION.  MAKER WAIVES AND RELINQUISHES, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO THE BENEFITS OF ANY MORATORIUM, REINSTATEMENT, EXTENSION, REDEMPTION, EXEMPTION, AND HOMESTEAD NOW OR HEREAFTER PROVIDED BY THE CONSTITUTION AND LAWS OF THE UNITED STATES OF AMERICA AND OF EACH STATE THEREOF, BOTH AS TO ITSELF AND TO ALL OF ITS PROPERTY, REAL AND PERSONAL, AGAINST THE ENFORCEMENT AND COLLECTION OF THE OBLIGATIONS EVIDENCED BY THIS NOTE.**

4.3     <u>Interest Provisions</u>.

Notwithstanding anything to the contrary contained herein, no provisions of this Note shall require the payment or permit the collection of interest in excess of the Maximum Lawful Rate.  If any excess of interest in such respect is herein provided for, or shall be adjudicated to be so provided, in this Note or otherwise in connection with this loan transaction, the provisions of this paragraph shall govern and prevail, and neither Maker nor the sureties, guarantors, successors, or assigns of Maker shall be obligated to pay the excess amount of such interest, or any other excess sum paid for the use, forbearance, or detention of sums loaned pursuant hereto.  If for any reason interest in excess of the Maximum Lawful Rate shall be deemed charged, required, or permitted by any court of competent jurisdiction, any such excess shall be applied as a payment and reduction of the principal of indebtedness evidenced by this Note; and, if the principal amount hereof has been paid in full, any remaining excess shall forthwith be paid to Maker.  In determining whether or not the interest paid or payable exceeds the Maximum Lawful Rate, Maker and Payee shall, to the extent permitted by applicable law, (i) characterize any non-principal

**PROMISSORY NOTE – Page 4**
7637378.3/SP/38371/0101/031616

payment as an expense, fee, or premium rather than as interest, (ii) exclude voluntary prepayments and the effects thereof, and (iii) amortize, prorate, allocate, and spread in equal or unequal parts the total amount of interest throughout the entire contemplated term of the indebtedness evidenced by this Note so that the interest for the entire term does not exceed the Maximum Lawful Rate.

As used hereunder, the term "Maximum Lawful Rate" shall mean the maximum lawful rate of interest which may be contracted for, charged, taken, received, or reserved by Payee in accordance with the applicable laws of the State of Texas (or applicable United States federal law to the extent that such law permits Payee to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law), taking into account all Charges made in connection with the transaction evidenced by this Note.

4.4     Governing Law; Submission to Jurisdiction.  This Note is executed and delivered as an incident to a lending transaction negotiated and consummated in Harris County, Texas, and shall be governed by and construed in accordance with the laws of the State of Texas.  Maker, for itself and its successors and assigns, hereby irrevocably (a) submits to the nonexclusive jurisdiction of the state and federal courts in Texas, and (b) waives, to the fullest extent permitted by law, any objection that it may now or in the future have to the laying of venue of any litigation arising out of or in connection with this Note brought in the District Court of Harris County, Texas, or in the United States District Court for the Southern District of Texas, Houston Division.

4.5     Counting of Days.  If any time period referenced hereunder ends on a day other than a Business Day, such time period shall be deemed to end on the next succeeding Business Day.

4.6     Successors and Assigns.  The terms and provisions hereof shall be binding upon and inure to the benefit of Maker and Payee and their respective heirs, executors, legal representatives, successors, successors-in-title and assigns, whether by voluntary action of the parties, by operation of law or otherwise, and all other persons claiming by, through or under them.  The terms "Maker" and "Payee" as used hereunder shall be deemed to include their respective heirs, executors, legal representatives, successors, successors-in-title and assigns, whether by voluntary action of the parties, by operation of law or otherwise, and all other persons claiming by, through, or under them.  Maker may not assign this Note without the prior written consent of Payee, which consent may be withheld for any reason or for no reason in Payee's sole discretion.

4.7     Headings.  The Article, Section, and Subsection entitlements hereof are inserted for convenience of reference only and shall in no way alter, modify, define, limit, amplify or be used in construing the text, scope or intent of such Articles, Sections, or Subsections or any provisions hereof.

4.8     Notices.  All notices or other communications required or permitted to be given pursuant to this Note shall be in writing and delivered to the other party at the addresses set forth below or to such other address as any party may designate by written notice to the other party.  Each such notice and demand shall be deemed given or made (whether actually received or not) (a) if sent by mail, upon the earlier of the date of receipt or three (3) days after deposit in the U.S. Mail, first class postal and (b) if sent by any other means, upon delivery.

**PROMISSORY NOTE – Page 5**

<u>Maker</u>:
CMG Asset Holdings LLC
15851 Dallas Parkway, Suite 650
Addison, Texas  75001
Telephone:  214-725-9818
Email:  jcalce@centurionmidstream.com
Attn:  John V. Calce

**with a copy to**
**(which copy shall**
**not constitute**
**notice hereunder)**

**Strasburger & Price, LLP**
**901 Main Street, Suite 4400**
**Dallas, Texas  75202**
**Telephone:  214-651-4705**
**Email:  jules.brenner@strasburKer.com**
**Attn:  Jules Brenner**

<u>Payee</u>:
Constructora Hostotipaquillo, S.A. de C.V.
Circuito Puericultores 4, Ciudad Satélite, C.P. 53100
Estado de Mexico, Mexico
Telephone:
Email:_____
Attn:  Legal

**with a copy to**
**(which copy shall**
**not constitute**
**notice hereunder)**

**Ryerson & Associates**
**2800 Post Oak Blvd, Suite 4100**
**Houston, Texas 77056**
**Telephone:  713-290-2301**
**Email:  carlos.ryerson@ryersonlaw.com**
**Attn:  Carlos Ryerson**

    4.9    <u>Severability</u>.  If any provision of this Note or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, then neither the remainder of this Note nor the application of such provision to other persons or circumstances nor the other instruments referred to herein shall be affected thereby, but rather shall be enforced to the greatest extent permitted by applicable law.

    4.10    <u>Costs of Collection</u>.  If any holder of this Note retains an attorney-at-law in connection with any Event of Default or at maturity or to collect, enforce, or defend this Note or any part hereof, in any lawsuit or in any probate, reorganization, bankruptcy, or other proceeding, or if Maker sues any holder in connection with this Note and does not prevail, then Maker agrees to pay to each such holder, in addition to the principal balance hereof and all interest hereon, all costs and expenses of collection or incurred by such holder or in any such suit or proceeding, including, but not limited to, reasonable attorneys' fees.

    4.11    <u>Gender</u>.  All personal pronouns used herein, whether used in the masculine, feminine, or neuter gender, shall include all other genders; the singular shall include the plural and vice versa.

**PROMISSORY NOTE – Page 6**
7637378.3/SP/38371/0101/031616

4.12   <u>ENTIRE AGREEMENT.</u>   THIS NOTE AND THE OTHER TRANSACTION DOCUMENTS CONTAIN THE FINAL, ENTIRE AGREEMENT BETWEEN THE PARTIES HERETO RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF, AND ALL PRIOR AGREEMENTS, WHETHER WRITTEN OR ORAL, RELATIVE HERETO AND THERETO WHICH ARE NOT CONTAINED HEREIN OR THEREIN ARE SUPERSEDED AND TERMINATED HEREBY, AND THIS NOTE AND THE OTHER TRANSACTION DOCUMENTS MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS AMONG THE PARTIES HERETO.

IN WITNESS WHEREOF, Maker, intending to be legally bound hereby, has duly executed this Note as of the day and year first written above.

**MAKER**:

CMG Asset Holdings LLC, a Delaware limited liability company

By: _____
     John V. Calce, its President



**PROMISSORY NOTE – Page 8**
7637378.3/SP/38371/0101/031616

## GUARANTY

This Guaranty with an effective date of April 17, 2017 (this "Guaranty") is executed by the undersigned ("Guarantors"), in favor of Constructora Hostotipaquillo, S.A. de C.V., ("Beneficiary").

## INTRODUCTION

A.     This Guaranty is given in connection with certain Promissory Notes with an Effective Date of April 17, 2017 (the "Note"), executed by CMG Assets Holdings LLC as Maker ("Maker") issued in favor of Beneficiary.

B.     Guarantors will derive substantial direct and indirect benefit from the transactions contemplated by the Note and the underlying Binding Memorandum of Understanding executed on April 17, 2017 between Maker and Beneficiary (the "MOU").

C.     Guarantors are executing and delivering this Guaranty and Collateral (i) to induce the Beneficiary to accept the Note as partial payment of the Purchase Price under the MOU, and (ii) intending it to be a legal, valid, binding, enforceable and continuing obligation of Guarantors, whether or not Guarantors derive any benefit from the Note or from the MOU.

NOW, THEREFORE, in consideration of the premises, Guarantors hereby agree as follows:

Section 1.     Definitions.  All capitalized terms not otherwise defined in this Guaranty that are defined in the Note shall have the meanings assigned to such terms by the Note.



Section 2.     Guaranty.  Guarantors hereby, jointly and severally, absolutely, unconditionally and irrevocably guarantee the punctual payment and performance, when due, whether at stated maturity, by acceleration or otherwise, of all of Makers' obligations under the Note, whether absolute or contingent and whether for principal, interest (including, without limitation, interest that but for the existence of a bankruptcy, reorganization or similar proceeding would accrue), fees, amounts required to be provided as collateral, indemnities, expenses or otherwise (collectively, the "Guaranteed Obligations"). Without limiting the generality of the foregoing, Guarantors' liability shall extend to all amounts that constitute part of the Guaranteed Obligations but for the fact that they are unenforceable or not allowable due to insolvency or the existence of a bankruptcy, reorganization or similar proceeding involving the Makers.

Section 3.     Guaranty Absolute.  Except as set forth herein, Guarantors guarantee that the Guaranteed Obligations will be paid strictly in accordance with the terms of the Note and the MOU, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of the Makers.  The obligations of Guarantors under this Guaranty are independent of the Guaranteed Obligations or any other obligations of any other Person under the MOU, and a separate action or actions may be brought and prosecuted against any Guarantors to enforce this Guaranty, irrespective of whether any action is brought against the Maker, any other Guarantors or any other person or whether the Maker, any other Guarantors

or any other person is joined in any such action or actions. The liability of Guarantors under this Guaranty shall be joint and several, irrevocable, absolute and unconditional irrespective of, and Guarantors hereby irrevocably waive any defenses it may now or hereafter have in any way relating to, any or all of the following:

(a)         any lack of validity or enforceability of the MOU or any part of the Guaranteed Obligations being irrecoverable;

(b)         any change in the time, manner or place of payment of, or in any other term of, all or any of the Guaranteed Obligations or any other obligations of any person under the MOU, or any other amendment or waiver of or any consent to departure from the MOU, including, without limitation, any increase in the Guaranteed Obligations resulting from the extension of additional credit to the Maker or otherwise;

(c)         any taking, exchange, release or non-perfection of any collateral, or any taking, release or amendment or waiver of or consent to departure from any other guaranty, for all or any of the Guaranteed Obligations;

(d)         any manner of application of collateral, or proceeds thereof, to all or any of the Guaranteed Obligations, or any manner of sale or other disposition of any collateral for all or any of the Guaranteed Obligations or any other obligations of any other person under the MOU or any other assets of the Maker or any of its subsidiaries;

(e)         any change, restructuring or termination of the corporate structure or existence of any Maker or any of its subsidiaries;

**(f)**         any signature of any officer of any Maker being mechanically reproduced in facsimile or otherwise; or

(g)         any other circumstance or any existence of or reliance on any representation by any Beneficiary that might otherwise constitute a defense available to, or a discharge of, the Makers, the Guarantors or any other guarantors, surety or other person.

Section 4.    Continuation and Reinstatement, Etc.  Guarantors agree that, to the extent that payments of any of the Guaranteed Obligations are made, and such payments or any part thereof are subsequently declared to be preferential, set aside, or otherwise required to be repaid, then to the extent of such repayment the Guaranteed Obligations shall be reinstated and continued in full force and effect as of the date such initial payment or collection of proceeds occurred.

Section 5.    Waivers and Acknowledgments.

(a)         Guarantors hereby waive promptness, diligence, presentment, notice of acceptance and any other notice with respect to any of the Guaranteed Obligations and this Guaranty and any requirement that Beneficiary protect, secure, perfect or insure any lien or any property or exhaust any right or take any action against the Maker or any other person or any collateral.

(b)     Guarantors hereby irrevocably waive any right to revoke this Guaranty, and acknowledge that this Guaranty is continuing in nature and applies to all Guaranteed Obligations, whether existing now or in the future.

(c)     Guarantors acknowledge that they will receive substantial direct and indirect benefits from the financing arrangements involving the Maker contemplated by the MOU and that the waivers set forth in this Guaranty are knowingly made in contemplation of such benefits.

Section 6.     Subrogation. Guarantors will exercise any rights that they may now have or hereafter acquire against the Maker or any other person to the extent that such rights arise from the existence, payment, performance or enforcement of such Guarantors' obligations under this Guaranty or the Note, including, without limitation, any right of subrogation, reimbursement, exoneration, contribution or indemnification and any right to participate in any claim or remedy of any Beneficiary against the Maker or any other person, whether or not such claim, remedy or right arises in equity or under contract, statute or common law, including, without limitation, the right to take or receive from the Maker or any other person, directly or indirectly, in cash or other property or by set-off or in any other manner, payment or security on account of such claim, remedy or right, unless and until all of the Guaranteed Obligations and any and all other amounts payable by the Guarantors under this Guaranty shall have been paid in full in cash, and all commitments under the Note shall have expired or terminated.

Section 7.     Representations and Warranties. Guarantors hereby represent and warrant as follows:

(a)     There are no conditions precedent to the effectiveness of this Guaranty.

(b)     Guarantors benefit from executing this Guaranty.



(c)     Guarantors have, independently and based on such documents and information as they have deemed appropriate, made their own credit analysis and decision to enter into this Guaranty, and Guarantors have established adequate means of obtaining from the Maker on a continuing basis information pertaining to, and are now and on a continuing basis will be completely familiar with, the business, condition (financial and otherwise), operations, properties and prospects of the Maker.

(d)     The obligations of Guarantors under this Guaranty are the valid, binding and legally enforceable obligations of such Guarantors, and the execution and delivery of this Guaranty by such Guarantors has been duly and validly authorized in all respects by such Guarantors, and the person who is executing and delivering this Guaranty on behalf of such Guarantors has full power, authority and legal right to so do, and to observe and perform all of the terms and conditions of this Guaranty on Guarantors' part to be observed or performed.

Section 8.     Riuht of Set-Off. Upon the occurrence and during the continuance of any event of default under the Note, Beneficiary is hereby authorized at any time, to the fullest extent permitted by law, to set off and apply any deposits (general or special, time or demand, provisional or final) and other indebtedness owing by such Beneficiary to the account of Guarantors or Maker against any and all of the obligations of the Guarantors under this Guaranty, irrespective of whether or not Beneficiary shall have made any demand under this



FROM THE WRITTEN AGREEMENT, AND ANY PRIOR ORAL AGREEMENTS BETWEEN THE PARTIES ARE SUPERSEDED BY AND MERGED INTO THIS GURANTY.  THIS GUARANTY, THE NOTE, AND THE MOU REPRESENT THE FINAL AGREEMENT AMONG THE PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS AMONG THE PARTIES.

[Remainder of this page intentionally left blank.]

Guarantors has caused this Guaranty to be duly executed as of the date first above written.

GUARANTORS:

INDIVIDUAL GUARANTORS:

_____
Miguel Nagel

_____
James Ballengee

Addresses of Guarantors:

Miguel Nagel
440 Louisiana, Suite 700
Houston, Texas 77002

James Ballengee
3838 Oak Lawn, Suite 1150
Dallas, Texas 75219



Centurion Midstream Group LLC
15851 Dallas Parkway
Suite 650
Addison, TX 75001
http://www.centurionmidstream.com

# INCOMING WIRE INSTRUCTIONS

## ABA (PRIMARY METHOD)

Receiving Bank:                          Wells Fargo

Routing No (wire transfers):             121000248

Beneficiary Name:                        Centurion Marketing, LLC

Beneficiary Account:                     5648630894